## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | | |
|---|---|---|---|
| IN RE: | KYUNG TAE KO | : | Chapter 13 |
| | YOUNG HEE KO, | : | |
| | | : | |
| | Debtors | : | Bky. No. 15-18948 ELF |
| | | : | |

# O R D E R

**AND NOW WHEREAS:**

A.  The Debtors commenced this chapter 13 bankruptcy case on **December 15, 2015**.

B.  The Debtors own residential real estate located at 12 Arbor Circle, Colmar, PA 18915 ("the Property").

C.  On **March 25, 2016**, the Debtor filed a motion styled as "Motion to Avoid Lien" ("the Motion") (Doc. # 28).

D.  In the Motion, the Debtor alleged that:

(1)  the value of the Property is **$306,000.00**;

(2)  Bayview Loan Servicing, LLC ("Bayview") holds a first position mortgage on the Property with an unpaid balance of **$325,000.00**;

(3)  PNC Bank, N.A. ("PNC") holds a second position mortgage on the Property with an unpaid balance of **$82,500.00**;

(4)  PNC's claim is entirely unsecured. See 11 U.S.C. §506(a);

(5)  The court should enter an order reclassifying PNC's claim as unsecured and avoiding its mortgage lien.[1]

E.  PNC filed a response to the Motion asserting that its claim is not entirely unsecured and

---

[1]        PNC did not actually file a proof of claim.

therefore, pursuant to In re McDonald, 205 F.3d 606 (3d Cir. 2000), the Debtor is not entitled

to any relief.

F.    The court has treated the Motion as a request for valuation under Fed. R. Bankr. P. 3012,

with the material issue being whether the value of the Property exceeds the unpaid balance of

the Bayview first mortgage.[2]


\*    \*    \*    \*    \*    \*


G.    Rather than present live expert testimony regarding the value of the Property, the parties

stipulated that the court should decide the issue based solely upon the expert appraisals

submitted by each of the parties in support of their respective positions.  (See Doc. # 84).[3]

---

[2]    There are a number of conceptual flaws in the Motion.  For example, the proposed order
would have this court reclassify PNC's "lien."  The terminology is wrong.  Claims, not liens, are
"classified" in bankruptcy cases.  More significantly, the Debtor requests, by motion, that the court
"avoid" PNC's lien.  Without setting out the entire analysis, suffice it to say that both procedurally and
substantively, the Motion is defective.

At the same time, the Bankruptcy Code contemplates that a recorded lien that secures an
undersecured claim may be avoided in a chapter 13 case.  For a mortgage subject to the anti-modification
clause of 11 U.S.C. §1322(b)(2), this avoidance may occur only if the secured claim is **entirely
undersecured**. See McDonald,.  The precise procedure for doing so is not entirely clear, but what is
clear is that a mortgage lien may not be avoided simply by filing a motion.  For a more detailed
explanation, see In re Sligh, 542 B.R. 723, 726 n.3 (Bankr. E.D. Pa. 2015) and In re Cusato, 485 B.R.
824, 829–31 & n. 6 (Bankr.E.D.Pa.2013).

Based on the analyses in Sligh and Cusato, I have treated the Motion as a request for
valuation under Fed. R. Bankr. P. 3012, with the potential relief being the entry of an order determining
that PNC's (unfiled) claim is not a secured claim, but is entirely an general unsecured claim.  The
consequence of this relief is that the Debtor may avoid PNC's lien through her chapter 13 plan and is not
precluded from doing so by the anti-modification clause of §1322(b)(2).


[3]    Obviously, this truncated procedure has its drawbacks.  Both cross-examination and the
opportunity for the court to pose some questions to an expert witness greatly facilitate the court's

(continued...)

H. Pursuant to their agreement, each party submitted an expert appraisal. (See Doc. #'s 81, 82).

I. PNC's expert valued the Property at **$350,000.00** as of **June 30, 2016**.

J. The Debtor's expert valued the Property at **$300,000** as of **July 14, 2016**.[4]

K. After review of the evidence presented, the court finds that the value of the Property is less

than the unpaid balance of the mortgage on the Property senior to PNC's mortgage.[5]

---

[3](...continued)
exercise of its factfinding function. Nevertheless, I accept that the parties are entitled to make the judgment that it is in their mutual interest to forego all of the formalities of a full-blown evidentiary hearing in return for the time and expense saved. In effect, the parties have agreed to a form of "alternate dispute resolution." This is consistent with the policy expressed in Fed. R. Bankr. P. 1001 (court rules should be interpreted "to secure the just, speed and inexpensive determination of every case and proceeding."

[4]     Thus, both parties have implicitly assumed that the appropriate date of valuation is at or near the expected effective date of the Debtor's chapter 13 plan, since the confirmation hearing will be held quickly on the heels of the conclusion of this contested matter. I will accept their implicit assumption, in part because there is no judicial consensus on the question. See generally Keith M. Lundin and William H. Brown, Chapter13online.com §107.1 (4th ed.).

[5]     Based on the nature of the issue presented, it is not necessary to make a finding as to the actual value of the Property. The only thing that matters is whether it exceeds the unpaid balance of Bayview's claim. What that unpaid balance is may not be entirely clear.

          In the Motion, the Debtor alleged that the unpaid balance is $325,00.00. On May 31, 2016, after this Motion was filed, Bayview, in its capacity as servicer, filed a secured proof of claim on behalf of The Bank of New York Mellon, as Trustee in the amount of $346,596.29. (Claim No. 7). By operation of law, that claim has been allowed. See 11 U.S.C. §502(a). However, the Debtor has not asked me to take judicial notice of the proof of claim and, arguably, is bound by its pleading. But this issue does not affect the outcome because, as explained below, I find that the value of the Property is less than $325,000.00.

          After reviewing the two (2) appraisals, I find that the Debtor's valuation is more likely to be accurate than PNC's.

          Both appraisals are based on the "comparable sales" methodology. I base my finding in the Debtor's favor largely on two (2) considerations:

(continued...)

It is therefore **ORDERED** and **DETERMINED** that:

1. The Motion is **GRANTED**.

2. The value of the collateral securing PNC's unfiled claim is less than the unpaid balance of the prior lien on the collateral.

3. The Debtor may modify PNC's rights in her chapter 13 plan.

**Date:** **August 9, 2016**

_____
**ERIC L. FRANK**
**CHIEF U.S. BANKRUPTCY JUDGE**

---

[5](...continued)

(1) the comparables chosen by the Debtor's appraiser are in the same development and, it appears, on the same street as the Property, while PNC's comparables are located over two (2) miles away from the Property; and

(2) the comparables chosen by the Debtor's appraiser required only modest adjustments for differing features (mostly in the range of $1,500.00 to $2,000.00), while the comparables chosen by PNC's appraiser required much larger adjustments (several being $10,000.00 or $15,000.00).

In short, from the face of the written appraisals, the Debtor's comparables appear much more comparable than PNC's. Consequently, I find that the fair market value is much closer to the Debtor's valuation and, in any event, certainly below $325,000.00.