**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: KYUNG TAE KO | : | Chapter 13 |
| YOUNG HEE KO, | : | |
| | : | |
| Debtors. | : | Bky. No. 15-18948 ELF |

# M E M O R A N D U M

## I.  INTRODUCTION

Before the court is the application for compensation and reimbursement of expenses ("the Application"), filed by the Debtors' counsel, The Baik Law Firm ("Baik").[1] Baik seeks the allowance of compensation in the amount of $11,855.00 and the reimbursement of expenses in the amount of $42.00.

No objections to the Application were filed. Nevertheless, the bankruptcy court "has a <u>duty</u> to review fee applications, notwithstanding the absence of objections by the United States trustee . . ., creditors, or any other interested party, a duty which  . . .  derives from the court's inherent obligation to monitor the Debtors' estate and to serve the public interest." <u>In re Busy Beaver Bldg. Centers, Inc.</u>, 19 F.3d 833, 841 (3d Cir. 1994) (emphasis in original).

The Application will be granted in part and denied in part.

As explained below, only $6,000.00 of the requested $11,855.00 will be allowed at this

---

[1] All of the services for which Baik seeks compensation were rendered by its attorneys Hae Yeon Baik and David Chandler ("Chandler"). The time records submitted in support of the Application did not differentiate between the services provided by the two (2) attorneys. From my vantage point, it appears likely that most of the work in this case was done by Ms. Baik, rather than Chandler. For ease of reference, I will refer interchangeably to the law firm and the individual attorney as "Baik."

time. This significant reduction is made primarily because Baik:

    (1)    was inefficient and expended excessive time on certain matters; and

    (2)    violated 11 U.S.C. §§330, 331 by taking compensation from property of the bankruptcy estate without court approval.[2]

## II. BACKGROUND

### A. Events in the Bankruptcy Case

**1. Confirmed Plan and Motions with Regard to the Debtors' Properties**

The Debtors filed this chapter 13 case on December 15, 2015. They filed their bankruptcy schedules and statements, and initial chapter 13 plan on January 15, 2016. Their fourth amended chapter 13 plan ("the Confirmed Plan") was confirmed on October 11, 2016.

The Debtors own two (2) pieces of real estate: a residential property in Colmar, PA ("the Residence") and a commercial property in Philadelphia, PA ("the Commercial Property").

Both properties are encumbered by a first mortgage. According to the Debtors' Schedule D, PNC Bank ("PNC") holds a second mortgage on the Residence and Citizens Bank ("Citizens") holds a second mortgage on the Commercial Property. (See Doc. #11). In addition, the City of Philadelphia ("the City") filed a secured claim for unpaid taxes due on the Commercial Property. (Claim No. 8). In Schedule F, the Debtors listed general unsecured claims totaling $39,709.22. (Doc. #11).

In both Schedule D and in later motions, the Debtors asserted that the balance due on the

---

[2] In the Application, Baik also requested reimbursement for expenses of $42.00. I will allow the reimbursement request and therefore, need not discuss it further in this Memorandum.

first mortgage on each property exceeds the value of the property, which would render each junior lien unsecured. See 11 U.S.C. §506(a).

The Confirmed Plan requires that the Debtors make payments to the chapter 13 trustee totaling $68,389.00. The plan further provides for:

(1) payment of Debtors' counsel's allowed compensation;

(2) resolution of the prepetition delinquency of the first mortgage on the Residence through a loan modification by the first mortgagee;

(3) distributions by the chapter 13 trustee to effect a cure of the arrears owed on the first mortgage on the Commercial Property ($38,296.00);

(4) treatment of the junior liens on both the Residence and the Commercial Property as unsecured claims based on the lack of value of the collateral. see 11 U.S.C. §506(a);

(5) distributions by the chapter 13 trustee to satisfy the City's tax claim on the Commercial Property ($15,893.00, which includes post-confirmation interest pursuant to 11 U.S.C. §1325(a)(5)(B)(ii)); and

(6) distributions by the chapter 13 trustee on allowed unsecured claims on a pro rata basis.

Prior to confirmation, the Debtors filed two (2) motions (collectively, "the Motions"), each designed to address the status of PNC and Citizens' junior liens (both of the liens described in Schedule D as based on mortgages). Each motion was styled as a "motion to avoid lien." (See Doc. #'s 28, 29). The Motions were premised on the theory that the balance due on the first mortgage on both the Residence and the Commercial Property exceeded the property's value, entitling the Debtors to "strip" the junior liens on the properties.

The Motions were flawed, each in its own way. These flaws both complicated case administration and are significant in evaluating Baik's entitlement to professional compensation.

**2. The Motion to Avoid PNC's Lien**

The Motion to Avoid PNC's Lien was flawed because a mortgage lien cannot be "avoided" by filing a motion, see Fed. R. Bankr. P. 7001(2); see also In re Cusato, 485 B.R. 824, 829–31 & n. 6 (Bankr. E.D. Pa. 2013) (discussing relevant Code provisions, case law and procedures available for voiding undersecured mortgage liens). As a result, I treated this motion as a motion for valuation under Fed. R. Bankr. P. 3012.

Although PNC did not file a proof of claim, it did contest the Debtors' motion. After a hearing, I granted the motion with regard to PNC and entered an order determining that the value of the collateral securing PNC's "unfiled claim" was less than the unpaid balance of the prior lien on the collateral and that the Debtor may modify PNC's rights in her chapter 13 plan. See In re Kyung Tae Ko, 2016 WL 4399501 (Bankr. E.D. Pa. Aug. 9, 2016). Significantly, while the August 9, 2016 order resolving the Motion to Avoid PNC's Lien granted the Debtors some relief, it did not void PNC's lien – which appeared to be the purpose of the motion. However, by citing a reported decision describing the available procedures for voiding an undersecured mortgage lien in chapter 13 cases, the August 9, 2016 order provided Baik with a "roadmap" describing how the valuation order could be employed to void the lien. See Kyung Tae Ko, 2016 WL 4399501, at *1 n.2 (Bankr. E.D. Pa. Aug. 9, 2016).

**3. The Motion to Avoid Citizens' Lien**

The Debtors' motion with respect to Citizens' lien on the Commercial Property, on its face, had the same basic flaw as the PNC motion; it was a misguided attempt to avoid a mortgage by filing a motion. However, the Citizens Motion also was premised on a factual flaw. Citizens

-4-

filed a proof of claim asserting secured status on the Commercial Property **based on a judgment lien, not a mortgage**.  (See Claim No. 2).

Citizens' judicial lien was potentially avoidable by motion as impairing the Debtors' exemptions.  See 11 U.S.C. §522(f); Fed. R. Bankr. P. 7001(2).  Instead of invoking this simpler procedure for avoiding Citizen's judicial lien, Baik presented the matter to the court as a mortgage lien strip.

Although Citizens participated in the case by filing a proof of claim, it did not contest the Debtors' motion with regard to its lien.  When the uncontested motion came before me, I did not at first notice the faulty premise of the motion.  Consequently, much in the same way that I fashioned appropriate relief in connection with the PNC motion, I entered an order granting an appropriate form of  limited relief.  The order entered by default disallowed Citizens' claim as a secured claim and allowed it as an unsecured claim.  The order did **not**, however, avoid Citizens' lien on the Commercial Property.  (See Doc. # 58).

Again, the purpose of the Debtors' motion was not achieved due to the pleading's defects.


**4. Current Status of the Liens on the Residence and the Commercial Property**

Despite the express, limited effect of the two (2) orders, Baik took no further action prior to confirmation of the Debtors' plan to void or avoid either the PNC mortgage or Citizens' judicial lien  – either by plan provision, motion or adversary complaint.  See generally In re McDonald, 205 F.3d 606, 615 (3d Cir. 2000) (wholly unsecured mortgage is subject to the modification under 11 U.S.C. §1322(b)(2)); In re Sligh, 542 B.R. 723, 726 n.3 (Bankr. E.D. Pa. 2015) (discussing how the lien securing a claim subject to modification under McDonald  may be

avoided through a chapter 13 plan provision or by adversary proceeding).

### B. The Application

**1. History of and Request for Payment**

Baik filed the Application on August 12, 2016. I scheduled a hearing to consider the Application.[3] Hae Yon Baik appeared and responded to the court's inquiries.

Baik has requested compensation totaling $11,855.00. Prior to the commencement of the bankruptcy case, Baik received a prepetition retainer of $3,000.00 from the Debtors. Baik disclosed this payment in its Rule 2016(b) Statement. (Doc. #14).

During the course of the case, prior to confirmation of their chapter 13 plan, the Debtors advanced an additional $4,000.00 to Baik. Baik did not disclose this postpetition payment in an amended Rule 2016(b) disclosure and did not disclose the payment until it filed the Application on August 12, 2016. At the November 8, 2016 hearing, Baik represented that she initially placed the $4,000.00 payment into the law firm's trust account, but at some point thereafter, moved the funds to the firm's operating account.

In light of the $11,855.00 in requested compensation, and taking into account the $7,000.00 already received from the Debtors (some prepetition and some postpetition), Baik currently seeks a distribution of $4,855.00 by the chapter 13 trustee from the bankruptcy estate.

---

[3] The hearing was scheduled for October 25, 2016 but was continued at Baik's request. The hearing on the Application was held on November 8, 2016.

### 2. Specifics of the Application

In the Application, Baik placed the services provided in two (2) categories:

    (1) "basic" bankruptcy services for which it seeks compensation of $3,000.00; and;

    (2) "beyond basic" bankruptcy services for which it seeks compensation of $8,855.00.

Baik defines the "basic" bankruptcy services as including debtor counseling, preparation of the required schedules and statements, obtaining the credit counseling and financial management certificates, obtaining and producing financial documents such as tax returns and bank statements, attendance at the §341 hearing, preparing the chapter 13 plan and amended plans. (Application ¶ B.2).

Generally speaking, Baik considers the "beyond basic" services as those services related to:

    (1) the treatment of the second mortgages on the Residence and Commercial Property; and

    (2) the loan modification application process with respect to the first mortgage on the Residence.

Baik submitted no time records for the $3,000 requested for "basic services," but did submit time records for the $8,855.00 in "beyond basic" services. Those time entries totaled 25.3 hours.[4]

---

[4] The Application states that both Baik and Chandler billed at $350.00 per hour. ($350.00/hour x 25.3 hours = $8,855.00).

The hourly rate requested is at the higher end of the hourly rate scale in chapter 13 cases in this region, but I will accept it given the number of years both Baik and Chandler have practiced law. Of course, this hourly rate mandates that attorney time be used efficiently. See In re Kimber, 2001 WL 1329226, at *6 (Bankr. D. Colo. Sept. 7, 2001); N. Trust Co. v. Brown, 1992 WL 220950, at *1 (N.D. Ill. Aug. 31, 1992).

## III. DISCUSSION

### A. General Considerations in Setting a Reasonable Fee

To begin my process for determining a reasonable attorney's fee in this chapter 13 case, I endorse the observations made by the court in In re McNally:

> To set fees, the Court returns to the fact that it must set a reasonable fee for the services performed under the circumstances of each case. Other courts have stated that **both the billing and fee review process are more art than science. The Court is not required to, nor realistically could it, determine an exact or a perfectly, precise fee for each case**. The Court's charge is to set a reasonable fee.[5]
>
> For this Court, that **fee review and allowance process is a holistic one**. It involves, on one level, **looking at the big picture of a case**. What were the results obtained? What were the problems encountered? What expertise did counsel bring to the case? Was the rate charged for the services within the legal community norms? And, was the engagement completed in a timely, efficient manner under the circumstances?
>
> **On another level, the process also involves looking at the specific tasks performed and the manner in which they were handled**. Were the services performed adequately described? Were given tasks necessary? Was the time spent on them reasonable? Did the tasks provide value by advancing the current issue or the case as a whole? How complex were the tasks? Who did them?

2006 WL 2348687, at *3 (Bankr. D. Colo. Aug. 10, 2006) (emphasis added).

In addition to the general principles stated above, effective court review of an application for compensation is dependent upon an adequate presentation by the applicant:

---

[5] Our Court of Appeals has stated the same principle: "Because its time is precious, the reviewing court need only correct reasonably discernible abuses, not pin down to the nearest dollar the precise fee to which the professional is ideally entitled." Busy Beaver, 19 F.3d at 845.

> The moving party bears the burden of proof in establishing an entitlement to compensation. Thus, requests for compensation may be disallowed or reduced if the moving party fails to identify each service separately and in sufficient detail in the application to provide the court with enough information to make an informed review of the request.

In re Murray, 2007 WL 2317523, at *2 (Bankr. E.D. Pa. Aug. 6, 2007) (citations omitted).

### B. Analysis of Baik's Compensation Request

In this case, I will employ the review methodology described in the McNally case, but I will begin with a relatively mechanistic lodestar analysis of Baik's time records. Then, I will consider from a "holistic" perspective, the value of the services rendered and results achieved. Finally, I consider the consequences of Baik's conduct that violated the Bankruptcy Code and related rules of court.

All three (3) steps in this process will result in separate reductions of the allowed compensation.

**1. Time Records**

The only time records submitted by Baik were for the "beyond basic" services.[6]

---

[6] Baik submitted no time records for the "basic" services. This was improper. Under L.B.R. 2016-2, if an applicant seeks allowance of compensation above the applicable "no-look" amount, time records for all of the services provided should be provided to the court.

I will overlook this defect in the interest of resolving the matter and avoiding "becom[ing] enmeshed in a meticulous analysis of every detailed facet of the professional representation [to the point] . . . that the inquiry into the adequacy of the fee assume[s] massive proportions, perhaps even dwarfing the case in chief." Busy Beaver, 19 F.3d at 845 (quoting Lindy Bros. Builders, Inc. v. American Radiator & Std. Sanitary Corp., 540 F.2d 102, 116 (3d Cir. 1976) (en banc)).

Further, even without time records, I am satisfied that compensation of $3,000.00 for the basic services in this case is reasonable. See n.10 & accompanying text, infra.

Baik has represented that the firm expended 25.3 hours in providing those services. I will not allow compensation for all of the time and services described in Baik's time records.

Set forth below is a table identifying grounds for disallowing compensation and the amount of the disallowances:

| Date | Activity | Time Spent | Time Disallowed | Explanation |
| --- | --- | --- | --- | --- |
| 3/25/16 | draft, file, serve cramdown motions | 4.20 | 2.20 | lumping multiple tasks, clerical tasks, excessive time spent |
| 4/15/16 | draft, file serve answer to Morebank §362 motion | 1.50 | 0.80 | clerical tasks, excessive |
| 4/21/16 | draft summary and argument for hearing on cramdown motion | 1.20 | 1.00 | excessive time spent [7] |
| 4/27/16 | various letters to Citizens Bank re: cramdown motion | 1.00 | 0.50 | lumping; excessive time |
| 6/15/16 | legal research on issues "involv[ing] clients' bankruptcy, particularly on [first mortgage on commercial property]" | 2.1 | 1.10 | inadequate explanation[8] |
| 7/26/16 | review City obj'n to confirmation; letter to City | 0.50 | 0.20 | excessive time spent |

---

[7]     At the hearing, by agreement, Baik and opposing counsel submitted competing appraisals and left it to the court to determine the value of the subject property. See Kyung Tae Ko, 2016 WL 4399501, at *1 n.3 & accompanying text. It therefore is difficult to see how Baik spent 1.2 hours preparing for the hearing.

[8]     Even though I lack adequate information to evaluate this time entry, I accept the notion that some legal research regarding the Debtors' relationship with the holder of the first mortgage on the Commercial Property may have been appropriate. Due to inadequate information, I disallowed approximately 50% of the compensation requested. Such an approach permits the court to avoid a fee application process that is overly cumbersome or disproportionate given the size of this case and the stakes involved. See Green Valley Beer, 281 B.R. 253, 259 (Bankr. W.D. Pa. 2002); In re Adventist Living Centers, Inc., 137 B.R. 701 (Bankr. N.D. Ill. 1991).

| various | unexplained telephone calls to attorneys, appraisers, Debtors | 4.40 | 2.20 | inadequate explanation |
|---|---|---|---|---|
| | | **TOTAL** | **8.0** | |

Disallowance of 8.0 hours would reduce Baik's compensation by $2,800.00. That represents a reduction of 23.6% of Baik's requested compensation of $11,855.00 and would result in the allowance of $9,055.00 in compensation. I will employ the $2,800.00 reduction as a starting point in determining Baik's compensation. But I consider it appropriate to make further adjustments as explained in the next sub-sections of this Memorandum.

**2. Case Overview Reduction**

From a holistic perspective, it is difficult to see why counsel fees of $9,055.00 are reasonable in this case.

To be sure, the case required more work than the proverbial "garden variety" chapter 13 case (if there is such a thing). The Debtors have two (2) properties, which, by itself, often entails additional legal work for a debtor's counsel. The Debtors sought to modify a unior liens on each of the Debtors' properties. See Part II.A., supra. One of the Motions regarding the properties was contested,[9] which necessarily entailed some additional work on Baik's part and the Debtors largely prevailed on the contested Motion. Baik also successfully resolved a stay relief motion filed by the first mortgagee on the Commercial Property and assisted the Debtors in obtaining a loan modification with respect to the first mortgage on their residence.

---

[9] I note, however, that I previously expressed an intentionally gentle critique (but a critique nonetheless) of the manner in which the PNC motion was litigated. See Kyung Tae Ko, 2016 WL 4399501, at *1 n.3.

Thus, there were some additional services provided that would warrant the allowance of compensation above that of an "average" chapter 13 case. Also, arguably, a reasonable fee, even for what Baik categorized as "basic services," may have exceeded $3,000.00.[10] All of this suggests that a higher fee than usual may be reasonable in this case.

On the other hand, these considerations must be tempered by considerations of efficiency and quality.

There is no indication that Baik expended a significant amount of time on the loan modification process with respect to the first mortgage on the Debtors' Residence or in resolving the stay relief motion and plan treatment of the first mortgage on the Commercial Property. This all probably took less than eight (8) hours.[11] Thus, the bulk of Baik's time for additional services was spent on the treatment of the undersecured junior mortgage on the Debtors' Residence. As

---

[10] The local rules in this district, like those of many other bankruptcy districts, authorize a summary procedure for certain fee applications in chapter 13 cases. Specifically, if counsel's total request for compensation (i.e., the sum of the prepetition retainer and the amount requested to be disbursed by the chapter 13 trustee) is $3,000.00 or less in a "below median" case, or $3,500.00 or less in an "above median" case, see 11 U.S.C. §1325(b)(3) (employing the median family income standard for determining the applicable commitment period in a chapter 13 case), the local rules authorize counsel to file a "short form" fee application, which requires only a description of the services rendered, the expenses incurred and a statement of the total amount of time expended. L.B.R. 2016-2. This summary process is commonly referred to as the "no-look" procedure.

To the extent that there is an "average" fee for a chapter 13 case, the no-look fee probably is that average fee. This was a "below median" case. (See Doc. # 13). However, the no-look fee in this district was last adjusted in 2008. A strong case can be made that the current no-look amounts are understated by at least $500.00.

[11] The time records indicate Baik expended a little over 2.0 hours in connection with the Residence loan modification (see Time Entries dated 12/30/15, 2/15/16, 7/29/16 and 8/2/16) and approximately 3.60 hours in connection with the Commercial Property stay relief motion (see Time Entries dated 3/31/16, 4/15/16, 4/25/16 and 6/23/16).

already indicated, there is reason to question the efficiency, efficacy and quality of Baik's advocacy with regard to these matters.

Critically, Baik invoked the wrong procedure in seeking to render void or avoid the undersecured junior liens on the Debtors' two properties. Even after the defects were pointed out with respect to PNC's mortgage lien, see Kyung Tae Ko, 2016 WL 4399501, at *1 n.2, Baik neither drafted a modified plan nor filed an adversary proceeding to accomplish the Debtors' goal of voiding the lien.

At the hearing on the Application, Baik expressed its intent to follow up confirmation of the Debtors' plan with further proceedings to void the two (2) junior liens. However, this only highlights that, to date, Baik has advanced the Debtors' interests only partially and inefficiently and, in its representation of the Debtors, did not grasp certain fundamental bankruptcy principles. This criticism of the quality of Baik's services is a significant factor in determining reasonable compensation in this case.

Based on these deficiencies, it is appropriate to reduce the allowed compensation below the mechanical lodestar. I find that the reasonable value of the services provided are $6,500.00.[12]

### 3. Sanction for Accepting Payment from Property of the Estate Without Court Approval and Without Proper Disclosure

As described in Part II.B.1, after receiving a prepetition retainer of $3,000.00, Baik accepted $4,000.00 in postpetition compensation from the Debtors without obtaining court

---

[12] Had Baik handled the avoidance issues more efficiently and competently, I may well have allowed more compensation. However, at this point, the results Baik has obtained for its clients are incomplete. Additional work on the Debtors' behalf remains necessary.

approval. This is a considerable payment in the midst of a chapter 13 case and Baik's receipt of those funds without court approval was a blatant violation of its obligations under the Bankruptcy Code and Federal Rules of Bankruptcy Procedure.

I will not set out here a detailed explanation of the reasons why Baik's actions were improper and violated 11 U.S.C. §§330, 331. Several published opinions in this district provide a full analysis of the issue. See In re Berg, 356 B.R. 378 (Bankr. E.D. Pa. 2006); accord In re Jensen, 2008 WL 2405023 (Bankr. E.D. Pa. June 13, 2008), reaff'd on reconsideration, 2008 WL 2550556 (Bankr. E.D. Pa. June 18, 2008). Suffice it to say that Baik was not entitled to be compensated from property of the bankruptcy estate without court approval. In addition, Baik failed to amend its Fed. R. Bankr. P. 2016(b) statement to disclose receipt of the compensation.[13]

The breach of the duty to obtain court approval before receiving compensation from the bankruptcy estate is not a mere technicality or formality. Court approval of professional compensation is "a fundamental principal of bankruptcy practice," Berg, 356 B.R. at 383, that is critical in maintaining "the integrity of the Chapter 13 process." Id. at 380. As a result, breach of that duty "is simply indefensible." Id. at 383.

It also is well established that the bankruptcy court has broad discretion to sanction an attorney for transgression of the compensation rules. That discretion includes the authority to deny all compensation. See, e.g., In re Zars, 434 B.R. 421, 432-33 (W.D. Tex. 2010); In re Dellutri Law Grp., 482 B.R. 642, 653 (Bankr. M.D. Fla. 2012); Berg, 356 B.R. at 383-84.

---

[13] Rule 2016(b) requires that the statement be supplement within fourteen (14) days after receipt of any payment not previously disclosed. The record in this case is not fully clear, but it seems likely that Baik received the $4,000.00 more than fourteen (14) days before disclosing it in the Application.

In this case, I consider denial of all compensation a disproportionate response to Baik's improper conduct. I perceive no intent to hide the compensation from the court, only a lack of familiarity with the requirements of the Code and rules of court. That lack of familiarity is disconcerting, particularly for an attorney with Baik's years of experience. But the absence of a more culpable scienter warrants some leniency in imposing an appropriate sanction, particularly because it appears that Baik is sincere in her efforts to assist the Debtors and has advocated for their best interests conscientiously, albeit clumsily. At the same time, however, Baik must be accountable for the improper conduct and some sanction should be imposed that "stings."

Employing the broad discretion with which I am clothed, I consider it appropriate to impose three (3) related sanctions.

First, I will disallow an additional $500.00 from the allowed compensation, reducing the allowed compensation from $6,500.00 to $6,000.00.

Second, to the extent that Baik follows through on its promise to provide additional services to the Debtors in connection with the possible avoidance of the two (2) junior liens on their real property, I will "cap" Baik's potential compensation for these services at $1,000.00.

Third, I will impose a presumption against the allowance of additional compensation for any other services Baik may need to provide in this case. While this third sanction is not an absolute cap, Baik will have to make a compelling case that the additional services were critical and that the services were provided with a high level of quality before I will consider allowing additional compensation for matters other than the potential avoidance of the junior liens on the Residence and the Commercial Property. In other words, Baik will have to demonstrate that equitable circumstances warrant relief from this particular sanction imposed by the order

accompanying this Memorandum.

### C. Logistics of Implementing this Decision

Baik has received $7,000.00 in compensation. I have allowed $6,000.00. Ordinarily, this would result in the entry of an order requiring Baik to disgorge $1,000.00. However, in the particular circumstances presented – where it is likely that Baik will render additional, important services to the Debtors to further their financial rehabilitation – I find it preferable to employ a different method of implementing this decision.

Rather than requiring disgorgement, I will direct Baik to place $1,000.00 in its attorney trust account on behalf of the Debtors. Those funds will be available for payment of additional compensation, if and when Baik provides the additional services related to the junior liens on the Residence and Commercial Property discussed earlier in this Memorandum. Such compensation will be allowed only upon application and after notice and hearing. Of course, any amounts placed in the attorney trust account that are not allowed as compensation prior to the close of this case will have to be returned promptly to the Debtors.

### IV. CONCLUSION

For the reasons set forth above, Baik's Application for Compensation will be granted in part and denied in part.

I will allow compensation of $6,000.00. I will direct Baik to place $1,000.00 of the $7,000.00 already received back into its attorney trust account, where it will be available for payment of any additional compensation that may be allowed by future order as a result of

additional services provided in connection with the junior liens on the Residence and the Commercial Property.  Absent compelling circumstances, I will not allow Baik any further compensation for services that may be rendered later in this case with respect to matters unrelated to the junior liens on the Debtors' properties.

An order consistent with this Memorandum will be entered.

Date:  **November 28, 2016**

**ERIC L. FRANK**
**CHIEF U.S. BANKRUPTCY JUDGE**